**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

**Case No. 1:24-cv-1187**

|  |  |
|---|---|
| **HOT GIRL WALK LLC,**<br>**a Delaware limited liability company,**<br>    Plaintiff,<br><br>v.<br><br>**CASEY SPRINGER d/b/a HOT WALK**<br>**INDY,**<br><br>        Defendants. | **COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff, Hot Girl Walk LLC ("Plaintiff," "Hot Girl Walk," or "HGW"), brings this action against Defendant Casey Springer formerly known as Hot Girl Walk Indy, and who is now doing business as Hot Walk Indy, and alleges as follows:

## SUMMARY

1.      This action is about a shameful effort by Defendant Casey Springer ("Springer") and others to destroy Hot Girl Walk, one of the most popular walking clubs in the world, through a series of disgraceful and unlawful acts intended to boost Springer's less-popular walking club in Indianapolis, Indiana. These defamatory acts, fueled by envy and jealousy, included, falsely reporting Hot Girl Walk social media accounts for "Child sexual abuse;" sending and encouraging others to send threatening direct messages to Hot Girl Walk and its founder; engaging in doxing of the founder of Hot Girl Walk and her family; and unleashing an army of social media users to "shit on the concept of Hot GIRL walk – make it irrelevant," and other actions all designed to take down the HGW brand and aggressively bully HGW.

2.      Springer's "unlawful" smear campaign to destroy HGW, began on or about July 2023, turned into stalking and all out harassment, including tortious interference, disparagement, defamation and more, including physical threats. With Springer as a ringleader, the harassing conduct by Springer and her cohorts had one main goal, to obliterate and destroy the HGW brand and concept to make the brand "nothing" as stated in Springer's own words. Plaintiff owns the Hot Girl Walk® brand and over the last few years, the. Hot Girl Walk® trademark and branding has exploded over social media, including, but not limited to, TikTok, Instagram, Facebook.

3.      Springer is employed as a marketing executive for a multinational software company, giving her the skills and expertise to organize campaigns that make or break companies' reputations. She chose to use her skills to assemble an army of social media users whom she encouraged, during all hours of the day and night, to use their online presence to damage the reputation of Hot Girl Walk, and to intimidate Ms. Lind and her family.

4.      The campaign to ruin HGW began not long after Ms. Amelia (Mia) Lind, the founder, originator and creator of the Hot Girl Walk® brand, reached out to Springer via DM to chat about the affiliated ambassador groups (also known as HGW United) to discuss whether Springer would be interested in heading the HGW United club in Indianapolis, the club that Springer had named Hot Girl Walk Indy.

5.      Springer blocked Ms. Lind and later changed her competing walking club's name from Hot Girl Walk Indy to Hot Walk Indy, both of which infringe the Hot Girl Walk® trademark.

6.      Springer has engaged in activity on social media and other nationwide forums designed to bully HGW and its affiliated ambassador groups (also known as HGW United) in various cities around the country, which include threats to HGW and Ms. Lind, as well as other members of HGW, and spreading false rumors and disparaging comments, including admitting

she is "activat[ing] an army of people to shit on the concept of Hot Girl walk – make it so irrelevant – then they have no brand nothing[.]"

7.     This lawsuit is necessary to stop Springer from further engaging in her tortious conduct designed to interfere with HGW's legitimate business interests; stop the threats, stalking, harassment, and cyber bullying directed to Ms. Lind and HGW; and, prohibit further infringement and damage to the HGW brand.

## PARTIES

8.     Plaintiff Hot Girl Walk LLC ("HGW" or "Plaintiff") is a Delaware limited liability company, located at 651 N. Broad Street Suite 201, Middleton, Delaware, 19709.

9.     Defendant Casey Springer ("Springer") doing business as Hot Girl Walk Indy and Hot Walk Indy, is an individual residing at 6218 Indianola Avenue, Indianapolis, IN 46220-2018, and is a citizen of the State of Indiana within the meaning and intent of 28 U.S.C. § 1332.  Springer originally founded her walking social group branded Hot Girl Walk Indy and later changed the name to Hot Walk Indy, due to Meta taking down her original account for trademark infringement.

10.     Upon information and belief, Springer is the founder, sole owner, and sole decision maker of Hot Girl Walk Indy and Hot Walk Indy.

## JURISDICTION AND VENUE

11.     This is an action for: (I) tortious interference with a business relationship; (II) disparagement (III) defamation; (IV) federal trademark infringement under 15 U.S.C. §§ 1501, *et seq*. (hereinafter the "Lanham Act"); (V) federal unfair competition and false designation of origin under the Lanham Act; and (VI) common law unfair competition and trademark infringement.

12.     This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, because this case arises under the Lanham Act, 15 U.S.C. § 1051, et seq.

13.     Furthermore, the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are residents of different states and the amount in controversy in this case exceeds the sum or value of $75,000, exclusive of interest and costs.

14.     This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Defendant because she is located in this district and has purposefully availed herself of the privilege of doing business in this district and committed tortious acts that have directly harmed HGW in this judicial district and/or engaged in conduct that she knew or should have known would cause injury to HGW in this judicial district.

16.     Moreover, Defendant conducts business activities in the State of Indiana through her various social media pages, which are accessible to consumers in this judicial district.

17.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1400(a) because Defendant is located in this district, has infringed HGW's intellectual property in this district, transacts business in this district, and a substantial part of the events giving rise to the claims asserted arose in this district.

## FACTS COMMON TO ALL COUNTS FOR RELIEF

### Hot Girl Walk's History

18.     Between November of 2020 and into early 2021, Ms. Lind, who was at the time a student at the University of Southern California, conceived of the HOT GIRL WALK® brand during the Covid lockdown.  As Covid was a stressful time, on top of many college commitments

4

and working, in addition to many fitness classes being closed during that time, Ms. Lind devised a fitness plan branded the HOT GIRL WALK®. HGW is a four mile outdoor walk, where, the focus is on gratitude (weeding out negative thoughts), thinking positively about goals and plans and to remind yourself of all your accomplishments, thus giving yourself confidence. This fitness walk became a training tool for Ms. Lind, her friends and bigger groups.

19.     Ms. Lind created the first HOT GIRL WALK® TikTok video and posted it on January 23, 2021 using the TikTok handle @exactlyliketheothergirls.  Since as early as 2021 and during Covid, Ms. Lind originated the concept of the Hot Girl Walk® brand and has been providing fitness training and inspirational messaging based on her program that includes, but is not limited to, a four mile outdoor walk where the focus is on three things: being grateful, achievement of personal goals and feeling good about yourself.



20.     In addition to TikTok, the Hot Girl Walk® trademark and brand eventually grew to Instagram and the website www.hotgirlwalk.com , to name a few:

21.     Many domestic and international news stories and articles were written about the HGW crediting Ms. Lind with the conceptualization and branding, including CNN, Fox News, The Washington Post, and The New York Times.

22.     Between January 2021 and April 2021, exponentially the HOT GIRL WALK® brand went viral and now there are over 3 million views of Ms. Lind's first TikTok. The HOT GIRL WALK® brand has grown very quickly and continues to do so.

23.     Between April 2021 into 2022, the value of the brand continued to grow, which resulted in HGW obtaining paid sponsorships from well-known brands such as Rael, Skull Candy, Spotify and Schmooze, to name a few.

24.     Ms. Lind graduated from the University of Southern California Magna Cum Laude with a communication major and minor in business and, up until recently, was working full time as an Account Executive at Oracle Corporation, a multinational software company. Ms. Lind recently resigned from Oracle to work full-time on building her brand and her company.

25.     Ms. Lind filed the trademark application which registered as Federal U.S. Trademark Registration No. 7037847 (the "'847 Registration" or Hot Girl Walk®) The '847 Registration was assigned to Plaintiff,  with the assignment recorded at the United States Patent and Trademark Office.

26.     HGW and Ms. Lind also own the following trademark applications: HOT GIRL WALK Trademark App. Nos. 98/116,569, 98/116,553, 98/116,540, 97,869,195 (Classes 3, 9, 13, 35, 41, & 45), HGW Trademark App. Nos. 98/110,714, 98/110,701, 98/110,707, 98/110,695 (Classes 25, 35, 41, & 45). The '847 Registration and the pending trademark applications nos. 98/116,569,  98/116,553,  98/116,540,  97,869,195,  98/110,714  ,  98/110,701,  98/110,707, 98/110,695, including all common law rights thereto are herein referred to as the "HGW Trademarks". (True and correct copies of the applications and registrations listed are attached as Exhibit "A")

27.     The HOT GIRL WALK® trademark, in particular, and the HGW Trademarks completely blew up on social media with CNN reporting there were 616 million views on TikTok. https://www.cnn.com/cnn-underscored/home/hot-girl-walk-tiktok-trend.  HGW's  HOT  GIRL WALK® brand is well-known in the United States and abroad, and immediately recognized by consumers as a symbol of celebrating female empowerment, while not excluding any other gender or sexual orientation.

28.     Since 2021, Ms. Lind has invested substantial time and money into the HGW Trademarks and brand.  Ms. Lind continues to invest in the brand with others who are part of HGW. Moreover, the HOT GIRL WALK® trademark is the subject of licenses and sponsorships all around the country and abroad.

29.    In one collaboration, HGW partnered with Strava, a company that owns a well-known fitness application with over 100 million users worldwide, to run a campaign branded HOT GIRL WALK® United, which was a global challenge to commit more time to movement. Strava found through their research that walking is one of the fastest growing fitness activities for women, and others, and this is why they partnered with such a recognizable brand like HOT GIRL WALK® for their challenge. The campaign was a huge success, as over 200,000 people, in over 190 countries, participated in the challenge which raised approximately $250,000 for charity. The "Hot Girl Walk club" on Strava is one of the most popular walking clubs on the app, with over 17,250 members and growing.

30.    The HGW Trademarks are also used in conjunction with many brand partnerships, including prominent organization such as Johnson & Johnson, American Heart Association, Pepsico, Weight Watchers and Too Faced:



31.    HOT GIRL WALK® United had member clubs which engaged in a licensing arrangement with Plaintiff ("HGW United"). HGW harnessed the local HOT GIRL WALK® clubs to create and promote the larger organization and provide more fitness training and followers

utilizing the HOT GIRL WALK® philosophy and emphasis on mental and physical well-being. One of the first companies that accessed this network was WW International (Weight Watchers) which held HOT GIRL WALK® events in Las Vegas, Nashville and Austin. Other local clubs work with Plaintiff to create the network and build the HOT GIRL WALK® community.

32.    HGW has spent significant time and money, and engaged in extensive efforts, to advertise and promote the goods and services in connection with the HOT GIRL WALK® trademark.

33.    HOT GIRL WALK® branded products and services are advertised in a variety of contexts and media, including in print and on the Internet, www.hotgirlwalk.com, TikTok, Instagram and other social media sites, actual HGW events, walks and other promotions. Consumers, accordingly, are exposed to the HOT GIRL WALK® trademark in a wide range of contexts.

34.    HGW has offered its HOT GIRL WALK® trademarked products and services all over the world, including throughout the United States. Through its promotion and investment in its brand and extensive HOT GIRL WALK® events, training on social media, HGW has acquired enormous goodwill in its HOT GIRL WALK® trademark.

35.    Indeed, the HOT GIRL WALK® trademark is recognized around the world and throughout the United States by consumers as a fitness training tool combined with the main three pillars which a person focuses on during the four mile outdoor walk, all to boost positive mental and physical health.

**Defendant's Scheme to Ruin the HGW Brand, Dox the HGW members and Destroy HGW**

36.     Springer admitted on a podcast by "Taking Care of Business" (Episode 142: Hot Walk Indy with Casey Springer - Taking Care in Business)  that she created "Hot Girl Walk Indy" because she was inspired by Ms. Lind's HOT GIRL WALK® brand.

37.     Upon information and belief, Springer adopted the words "Hot Girl Walk" so as to cause confusion, or to cause mistake, or to deceive as to her affiliation, connection, or association with HGW, when no such affiliation, connection, or association existed.

38.     In an initial attempt to create a dialogue with Springer about the HGW United program, in or around July 2019, Ms. Lind reached out to Springer via her "Hot Girl Walk Indy" Instagram account and offered to collaborate in exchange for a zero-charge license. Moreover, Ms. Lind trusted Springer and provided her mobile phone number to Springer so that she could contact Ms. Lind directly.

39.     Springer responded dismissively, immediately blocked HGW and Ms. Lind on the "Hot Girl Walk Indy" Instagram account.  Later, Springer boasted to others that she had Ms. Lind's personal cellphone number and planned to sign her up for SPAM calls.

40.     Without any efforts by Springer to change the name away from "Hot Girl Walk Indy," on July 16, 2023, HGW's representative filed a takedown request with Facebook/Meta based on its intellectual rights in the HOT GIRL WALK® trademark.

41.     Upon information and belief, the Facebook/Meta Team took down Springer's Instagram Account on or around July 16, 2023.



42.    To the best of HGW's knowledge, Springer filed an appeal of the Facebook/META takedown decision and lost.

43.    Springer knew or had reason to know she was infringing on HGW's HOT GIRL WALK® and other HGW Trademarks, and eventually changed the name of her group to "Hot Girl Indy," which is still infringes HGW's HOT GIRL WALK® and other HGW Trademarks .



44.     However, this was just the beginning and has turned into a myriad of tortious conduct that had one main goal, to obliterate and destroy the HGW brand and concept so as to make the brand **"nothing,"** per Springer's own words.

45.      On or about July 1, 2023, Springer joined the "Walking Club Administrators" chat group on the GroupMe platform ("WCA Chat Group").

46.     Springer used the WCA Chat Group as a forum in which to facilitate her scheme to ruin the HGW brand, with the clear goal as stated by Springer herself to **"activate an army of people to shit on the concept of Hot GIRL walk -- make it so irrelevant – then they have no brand nothing."**

47.     In fact, Springer declared in the WCA Chat Group that she would **"[s]ign [Mia] up for spam calls, "** that "**of course we are going to shit all over Mia and her butt –ugly merch,**" and that "**Mia, She'll get hers, I'm sure of it."**  In response to Springer's call to action to sign Ms. Lind up for SPAM calls in January of 2024, other Walking Club Administrators, commented that "I'll give her a little call from my friend 😀," and  "[s]hould I change my prompt to "we're walking group admins, we can't fucking stand mia. "

48.     Springer also told the other WCA Chat Group Administrators that "**Ive been doing some of gods work behind the scenes and … so maybe I'll just message the group admins….be added as an admin."**

49.     Springer said **"[She was]tagging  Mia, Alicia, Becca, Howard! I am sounding the Lind family alarm."** Springer posted contact and social media account information for members of the Lind family for everyone in the chat room to see and to report, harass, and otherwise harm Lind family members.

50.     Upon information and belief, Springer and others used the WCA Chat Group to obtain information on any person or organization that participated in the HGW United Program, and once she obtained the information, would publicly call out those persons or organizations and place them on "blocked" list, especially if the walking group had a good relationship with HGW United.

51.     For example, the Nashville Girls Who Walk Group run by Sarah Larson ("Larson") joined the HGW United program on June 30, 2023, and was even paid by HGW to run a Weight Watchers International sponsored event in Nashville, which took place on May 20, 2023. However, Springer and her cohorts interfered with HGW's relationship with the Nashville Girls Who Walk Group and made false statements about HGW and Ms. Lind, including, but not limited to, claiming

HGW is a multi-level marketing company ("MLM"), when it is not. Springer and the others also called out which members on the WCA Chat Group naming which groups were part of the HGW United and on or about July 19, 2023, many clubs were removed from the WCA Chat Group. Larson admittedly left HGW United due to Springer's and the others comments about HGW, which were not only untrue but designed to ruin HGW, its branding and poison relationships with HGW United ambassador members. As a result, Larson of the Nashville Girls Who Walk Group stopped working with HGW United and left the program.

52.     To make matters even worse, upon information and belief, Springer continued her malicious activities by intentional and false reporting, or encouraging others to do so at her direction, of HGW's social media as being associated with child sexual abuse, which disrupted HGW's social media platforms and a search of the HGW social media returned the following results:



53.     Upon information and belief, Springer's false reporting and blocking has occurred since July 2023, and HGW has devoted countless hours and resources trying to overturn this false child sexual abuse and harassment reporting that has apparently been done by numerous people, which include Springer, the other WCA Chat Group Administrators, and anyone they can get to anonymously report HGW as being connected to child sexual abuse. Such claims are patently untrue, but have caused distress and harm to the HGW brand and its members, and harmed the company by making a search for Hot Girl Walk not possible on social media.

54.     This online harassment based upon such heinous false accusations has caused HGW emotional distress.

55.     Since 2023 and continuing into 2024, the WCA Chat Group members, to which Springer is an active member and ringleader, are still threatening Ms. Lind and HGW with reporting false walks in the Bermuda triangle, Pangea, Antarctica, prisons, and/or islands where the inhabitants attack HOT GIRL WALK® participants that come on the island. There are discussions of signing Ms. Lind up for SPAM calls, and even worse, threatening to give Ms. Lind a call from "my friend" with a punch emoji, which can only be interpreted as a threat of physical violence.

56.     The WCA Chat Group continue that they are going to change their prompts to "we can't fucking stand mia" and that the members are "gonna shit all over Mia and her butt-ugly merch."

57.     So as to cloak their activities from HGW, the WCA Chat Group, upon information and belief, also shows that the members of the WCA Chat Group were working together to report/block HGW and the Lind family members on Instagram and Facebook. One comment in the WCA Chat Group was to report Mr. Lind, a managing member of Hot Girl Walk, LLC, on

LinkedIn for not being a real person, which is clearly false and online harassment designed to interfere with the HGW business. Thus, the discussion to stalk and follow HGW at all locations where  HGW walks were scheduled, particularly in light of the past threats and continuing online harassment, has caused and is causing alarm and distress to the members of HGW and HGW is concerned for the safety of its members.

58.     In late June 2024, HGW through its counsel sent two cease and desist letters to Springer (a true and correct copy of the cease and desist letter is attached hereto as Exhibits "B" and "C"), but instead of stopping her infringing activity or agreeing to stop any harassment or malicious activities, Springer's call to action after receiving the cease and desist letters was to double down on her smear campaign by taking it to her public Instagram account; and, as stated in her own words  **"activate an army of people to shit on the concept of Hot GIRL walk -- make it so irrelevant – then they have no brand nothing."**

59.     One example of a malicious action that occurred on July 6, 2024, after Springer presumably received the cease and desist letters upon information and belief, Springer or her followers at her direction, made changes the HGW Wikipedia page to include disparaging and untrue statements. For instance, reference to Ms. Lind as an "influencer" was changed to "bully," and additional language was added to falsely claim Ms. Lind "stole the reference to fit her "brand" identity." The changes can be tracked as follows with the original text on the left and the changed text on the right side below, with the underlined bold as additions on the right side with the deletions in bold cross out on the left side:





60.   After receiving the cease and desist letters, Springer and/or Springer's followers at her direction made comments on the Hot Walk Indy public Instagram page that Ms. Lind stole and lifted the idea of HGW from Megan Thee Stallion, which accusation is patently false. In fact, Springer's followers accuse Ms. Lind, a white woman, of stealing money from minority communities, which accusation is also patently false.

61.   Springer instigated the comments and did nothing to correct or delete them, thereby allowing the comments to stay on her Hot Walk Indy public Instagram page and continue the false narrative:





62.     Due to Springer's posts, there are now pages and pages of comments from Springer's followers on the Hot Walk Indy public Instagram page who are condemning HGW and getting riled up by Springer's posts, which are untruthful and designed to create further controversy

around HGW, and perpetuate her scheme to ruin HGW's branding and image by inciting her
followers to go after HGW and Mia themselves.



63.     Even more threatening and malicious is a DM message from a "Jojo
(jokerapologist) who, upon information and belief, is Springer or a person acting at Springer's
direction, who sent the threats as follows, one to HGW and the other to Ms. Lind:

 **Jojo** ›
jokerapologist



**Jojo**

jokerapologist · Instagram
370 followers · 6.8K posts
You don't follow each other on Instagram

**View profile**

SAT 11:22 PM



You're going DOWN, nobody likes a bully !! You don't have anything to stand on with your c&d.



64.    The threats from Jojo, which appears to be made from a "burner account" are, upon information and belief, from Springer, her agents or someone acting in concert with her, given the reference to the Indy walking group and Megan Thee Stallion.  This viciousness conduct is very scary to HGW, its founder and the Lind family, in addition to all the other threatening actions.

65.    Moreover, HGW is receiving disparaging and malicious comments on its social media, which upon information and belief, is from Springer and/or her followers at Springer's direction:







66.    In disregard of HGW's rights in the HOT GIRL WALK® trademark – and without authorization from Hot Girl Walk – Springer has also promoted, offered organized outdoor walks under the HOT GIRL WALK® trademark and similar variations, which inevitably will imply to consumers that HGW has endorsed or authorized the Springer's "Hot Girl Walk Indy" or "Hot Walk Indy."

67.    Given the exact similarities in the HGW Trademark use by Springer, in appearance and pronunciation, a consumer would likely be confused as to the sponsorship and/or affiliation between the HGW's and Springer's services.

23

68.     Springer's use of the HGW Trademarks or similar variations is likely to cause confusion, mistake, and/or deception as to the source or origin of Defendant's services because: 1) the HOT GIRL WALK® trademark is strong, well-known, and entitled to a broad scope of protection; 2) both Defendant and Plaintiff advertise in similar types of media; and 3) Plaintiff's HOT GIRL WALK and Defendant's "Hot Girl Walk Indy" and "Hot Walk Indy" are identical and similar, both visually and phonetically.

69.     Springer is not affiliated or connected with or endorsed or sponsored by HGW, nor has HGW approved any of the services offered or sold or intended to be sold by Springer.

70.     Use of the HOT GIRL WALK® trademark and variations thereof by Springer, formerly known as "Hot Girl Walk Indy" and now known and doing business as "Hot Walk Indy," has bestowed an improper personal benefit to Springer, in addition to acting in conscious disregard and engaging in the willful trademark infringement and unfair competition violations.

## COUNT I
### (Tortious Interference With Business Relationship)

71.     HGW realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 70 of this Complaint.

72.     The HGW United Program is a program that local representatives in cities sign up for and become part of the HGW United Program, signing a contract with HGW creating a relationship together.

73.     On or about June 30, 2023, Larson of Nashville Girls Who Walk signed the Hot Girl Walk® Ambassador Agreement to be recognized as a Hot Girl Walk Ambassador and/or Hot Girl Walk Club. The Hot Girl Walk® Ambassador Agreement granted the local club a limited no charge license.

74.     Larson of the Nashville Girls Who Walk walking group was paid $1,000 by members of the HGW to help host a Weight Watchers event that was part of the Weight Watchers anniversary event in 2023.

75.     As a result of this transaction, HGW had a reasonable expectation of increasing its brand recognition and economic gain from future events and sponsorships and further brand development. At the time, Larson was the only Hot Girl Walk Ambassador in Nashville and HGW was growing its Ambassador program through affiliations in many other cities around the country.

76.     Upon information and belief, Springer was aware of the HGW United Program and the Hot Girl Walk® Ambassador Agreement and along with others was keeping track of which walking clubs in various cities were members of the HGW United Program.

77.     Upon information and belief, Springer either personally or in conjunction with other walking club administrators created the WCA Chat Group, in part, to keep track of which walking clubs worked with HGW and which did not.

78.     Upon information and belief, Springer and other walking club administrators started spreading false statements about HGW and the HGW United Program to ban any walking groups associated with HGW and the HGW United Program from their walking group which had various ways of communicating, including in the WCA Chat Group.

79.     Springer and/or persons directed by Springer in the WCA Chat Group falsely stated that HGW was a multi-level marketing group, which is patently false and aimed to put HGW in a false and negative light.

80.     As a result of the "smear campaign" waged by Springer and other walking administrators at her direction, walking clubs such as the Nashville group who signed up for the

HGW United Program dropped out and ceased all involvement with HGW, even though they had been paid to assist in the Nashville walk for Weight Watchers in connection with HGW.

81.     With the smear campaign and derogatory and false statements in the WCA Chat Group and likely elsewhere, Springer intended to disrupt HGW's relationship with third parties.

82.     As a direct result, Springer disrupted any business relationship between the Nashville Girls Who Walk group and HGW.

83.     Springer intended to impair or destroy HGW's business relationship with any HGW United Program members, including the Nashville Girls Who Walk group, thereby destroying HGW's expectancy of brand growth and any economic gain from further sponsorships.

84.     Springer's interests were advanced by getting the HGW United members to quit the program making the HGW program suffer in membership and stifle local community growth.

85.     Springer engaged in the interfering conduct with malice toward HGW and a desire to injury HGW and its brand economically, and with wantonness and disregard for HGW's rights.

86.     Springer's conduct was improper, unlawful, and unfair, in that HGW and its HGW United Program was not an MLM program, as asserted by Springer to third parties, and Springer had the ability to know this was untrue by merely speaking with the Nashville Girls Who Walk group leader, Larson.

87.     The loss of HGW United members due to the wrongful interference hurt and damaged the HGW brand, resulting in lost opportunities and interference with the local relationships.  HGW was also further damaged from the wrongful interference, as HGW spent significant funds creating merchandise and marketing materials for the HGW United program, spent funds for legal agreements, and also devoted countless hours to design, build, and communicate this program.

88.     The illegal acts that were involved in the tortious interference include Springer's "smear campaign" and malicious acts in informing her public Instagram group of the cease and desist to ruin HGW's business reputation, reporting and blocking HGW on Meta for child sexual abuse and trafficking, and working to influence HGW United members to quit HGW.

89.     The conduct engaged in by Springer was the proximate cause of the loss or impairment of HGW's business relationship with the Nashville Girls Who Walk club, as well as other walking clubs who left the HGW United Program.

90.     Springer was not justified or privileged to engage in the conduct described herein, which resulted in the impairment or loss of the HGW United Program membership, including the loss of the Nashville Girls Who Walk club

## COUNT II
### (Defamation)

91.     HGW realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 70 of this Complaint.

92.     Between July 2023 to date, Springer published a number of statements defaming Plaintiff HGW, and injuring HGW's professional reputation among those with whom HGW engaged in discussions related to current or potential business relationship. Among the various defaming statements are as follows:

   a. On or about July 6, 2024Wikipedia- see paragraph 45 herein.
   b. On or about July 6, 2024, saying the cease and desist was illegal in her Instagram Hot Walk Indy posts with pictures, see paragraph 48 herein.
   c. On or about July 18, 2023 "They're basing their entire business model on two really shaky things:1. a stupid irrelevant term that will mean nothing soon2. OTHER people's clubs that she's completely shitting on and shutting down. They're digging their own grave. Let them."
   d. On or about July 22, 2023 "No one in this chat are in United (their program) and WANT to be; some are in United and are reevaluating or seeking counsel to null their contracts. Some avoided by changing names, some yeah… weren't even found."

    e.  On or about Oct. 14, 2023, "The "girl who trademarked Hot Girl Walk" — love it lol. Well, the Strava is ALL she has, she's not an admin for her own walking club. I feel like she primarily uses it to peddle her mediocre (at best) merch"

    f.  On or about July 20, 2023, "HOT Girl Walk. It's giving… mean girl. It's giving… MLM. No thank yewww 😖"

93.    The foregoing statements are false.

94.    Springer published the defamatory statements with the actual knowledge that they were false, or with reckless disregard as to their truth or falsity, or negligently.

95.    HGW is not a "public figure" and is not involved in any public controversy in connection with its profession, trade, or business.

96.    Springer's defamatory statements do not involve a matter of public concern.

97.    Springer intentionally published the defamatory statements, which were known to be false for the purpose of injuring HGW and obtaining a competitive advantage.

98.    As a result of Springer's defamatory statements, HGW has suffered damages including, but not limited to, a decline in the HGW United Program and severed business relationships.

99.    As a result of Springer's actions, HGW has lost profits, and incurred other expenses, and otherwise been damaged.

## COUNT III
### (Business Disparagement)

100.    HGW realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 70, 96-104 of this Complaint.

101.    Between July 2023 to date, Springer published a number of disparaging statements concerning HGW, and injuring HGW's professional reputation among those with whom HGW

engaged in discussions related to current or potential business relationship. Among the various disparaging statements are as follows:

    a. On or about July 6, 2024Wikipedia- see paragraph 45 herein.

    b. On or about July 6, 2024, saying the cease and desist was illegal in her Instagram Hot Walk Indy posts with pictures, see paragraph 48 herein.

    c. On or about July 18, 2023 "They're basing their entire business model on two really shaky things:1. a stupid irrelevant term that will mean nothing soon2. OTHER people's clubs that she's completely shitting on and shutting down. They're digging their own grave. Let them."

    d. On or about July 22, 2023 "No one in this chat are in United (their program) and WANT to be; some are in United and are reevaluating or seeking counsel to null their contracts. Some avoided by changing names, some yeah… weren't even found."

    e. On or about Oct. 14, 2023, "The "girl who trademarked Hot Girl Walk" — love it lol. Well, the Strava is ALL she has, she's not an admin for her own walking club. I feel like she primarily uses it to peddle her mediocre (at best) merch"

    f. On or about July 20, 2023, "HOT Girl Walk. It's giving… mean girl. It's giving… MLM. No thank yewww 😖"

102.    The foregoing statements are false.

103.    Springer published the disparaging statements with the actual knowledge that they were false, or with reckless disregard as to their truth or falsity, or negligently.

104.    HGW is not a "public figure" and is not involved in any public controversy in connection with its profession, trade, or business.

105.    Springer's disparaging statements do not involve a matter of public concern.

106.    Springer intentionally published the disparaging statements which was known to be false for the purpose of injuring HGW and obtaining a competitive advantage.

107.    As a result of Springer's defamatory statements, HGW has suffered damages including, but not limited to, a decline in the HGW United Program and severed business relationships.

108.    As a result of Springer's actions, HGW has lost profits, and incurred other expenses, and otherwise been damaged.

## COUNT IV
### (Federal Trademark Infringement – 15 U.S.C. §§ 1114-1117)

109.    HGW realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 70 of this Complaint.

110.    Defendant has used, in connection with the sale, offering for sale, distribution, or advertising of her products and services bearing the Infringing Marks, words and symbols that infringe upon the HOT GIRL WALK® trademark and the HGW Trademarks.

111.    These acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114. Defendant's willfulness is displayed not only in the infringements, but in her decisions to persist in infringements after receiving notice and communication from Ms. Lind, the President of HGW and creator of the Hot Girl Walk® trademark, HGW Trademarks and brand.

112.    As a direct and proximate result of Defendant's conduct, Hot Girl Walk is entitled to recover up to treble the amount of Defendant's unlawful profits and Hot Girl Walk's damages and an award of attorneys' fees under 15 U.S.C. § 1117(a).

113.    Hot Girl Walk is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendant to stop use of the Infringing Marks, and any other mark or design similar to the HOT GIRL WALK® trademark and HGW Trademarks.

## COUNT V
### (Federal Unfair Competition and False Designation of Origin – 15 U.S.C. § 1125(a))

114.    HGW realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 70 of this Complaint.

115.    Defendant's conduct as alleged in this Complaint constitutes the use of symbols or devices tending falsely to describe the infringing products and services, within the meaning of 15 U.S.C. § 1125(a)(1). Defendant's conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of the infringing products and services to the detriment of Hot Girl Walk and in violation of 15 U.S.C. § 1125(a)(1).

116.    As a direct and proximate result of Defendant's conduct, Hot Girl Walk is entitled to recover up to treble the amount of Defendant' unlawful profits and Hot Girl Walk's damages, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

117.    Hot Girl Walk is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendant to stop use of the Infringing Marks, and any other mark or design similar to the HOT GIRL WALK® trademark and HGW Trademarks.

## <u>COUNT VI</u>
### (Common Law Infringement and Unfair Competition)

118.    HGW realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 70 of this Complaint.

119.    Hot Girl Walk owns valid and protectable rights in its HOT GIRL WALK® trademark and HGW Trademarks at common law.

120.    Defendant's conduct is likely to cause confusion, to cause mistake, or to deceive as to the source of goods and services offered by Defendant, or as to affiliation, connection, association, sponsorship, or approval of such goods and services, and constitutes infringement of Hot Girl Walk's the HOT GIRL WALK® trademark and HGW Trademarks at common law.

121.    Defendant infringed Hot Girl Walk's the HOT GIRL WALK® trademark and HGW Trademarks with knowledge and intent to cause confusion, mistake, or deception.

122.    As a direct and proximate result of Defendant's activities, Hot Girl Walk has suffered substantial damage.

123.    Unless restrained and enjoined, Defendant's conduct will further impair the value of the HOT GIRL WALK® trademark, HGW Trademarks, and Hot Girl Walk's business reputation and goodwill. Hot Girl Walk has no adequate remedy at law.

124.    Hot Girl Walk is entitled to monetary damages and injunctive relief prohibiting Defendant from using the Infringing Marks, and any other mark or design similar to the HOT GIRL WALK® trademark or HGW Trademarks.

125.    Without injunctive relief, Hot Girl Walk has no means by which to control the continuing injury to its reputation and goodwill or that of its HOT GIRL WALK® trademark and HGW Trademarks. Hot Girl Walk has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Hot Girl Walk if it loses the ability to control its marks.

126.    Because Defendant's actions have been committed willfully, maliciously, and intentionally, Hot Girl Walk is entitled to recover reasonable attorneys' fees and compensatory and punitive damages.

## **PRAYER FOR JUDGMENT**

WHEREFORE, Hot Girl Walk prays that this Court grant it the following relief:

1.    Judgment against Defendant for compensatory and punitive damages, attorney's fees, the costs of this action and all other relief proper in the premises.

2.    Adjudge Defendant has infringed the HOT GIRL WALK® trademark and HGW Trademarks in violation of Hot Girl Walk's rights under 15 U.S.C. § 1114;

32

3.      Adjudge Defendant has competed unfairly with Hot Girl Walk in violation of Hot Girl Walk's rights under 15 U.S.C. § 1125(a);

4.      Adjudge Defendant has infringed Hot Girl Walk's common law rights in the HOT GIRL WALK® trademark and HGW Trademarks;

5.      Adjudge Defendant and her agents, employees, attorneys, successors, assigns, affiliates, and joint venturers, and any person(s) in active concert or participation with her, and/or any person(s) acting for, with, by, through or under her, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

a.      Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble the HOT GIRL WALK® trademark and HGW Trademarks as to be likely to cause confusion, mistake, or deception, on or in connection with any product that is not authorized by or for "Hot Girl Walk," including, without limitation, any product or service that bears the "Hot Girl Walk Indy" or "Hot Girl Indy," or any other approximation of HGW Trademarks.

b.      Using any word, term, name, symbol, device, or combination that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Defendant or her products with HGW, or as to the origin of Springer's goods and services, or any false designation of origin, false or misleading description or representation of fact;

c.      Further infringing the rights of HGW in and to its HGW Trademarks or otherwise damaging Hot Girl Walk's goodwill or business reputation;

d.      Otherwise competing unfairly with Hot Girl Walk in any manner;

e.      Continuing to publish or disseminate false, defamatory and/or derogatory content aimed at harming HGW and/or Ms. Lind; and

f.      Continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint;

6.      Adjudge Defendant is prohibited from applying to register any other trademark or service mark which is likely to be confused with Hot Girl Walk's HOT GIRL WALK® trademark or HGW Trademarks;

7.      Adjudge and require Defendant to delete the false, defamatory, and/or derogatory content she posted about HGW and Ms. Lind;

8.      Adjudge Defendant, within thirty (30) days after service of the Court's judgment, be required to file with this Court and serve upon Hot Girl Walk's counsel a written report under oath setting forth in detail the manner in which it has complied with the judgment;

9.      Adjudge that Hot Girl Walk recover from Defendant its damages and lost profits, and Defendants' profits in an amount to be proven at trial;

10.     Adjudge that Defendant be required to account for any profits that are attributable to its illegal acts, and that HGW be awarded (1) Defendant's profits and (2) all damages sustained by Hot Girl Walk, under 15 U.S.C. § 1117, plus prejudgment interest;

11.     Adjudge that the amounts awarded to HGW pursuant to 15 U.S.C. § 1117 shall be trebled;

12.     Adjudge the amounts awarded to HGW include exceptional damages for intentional activity, bad faith, and willful conduct, equal to three times profits or damages, whichever is greater;

13.     Order an accounting of and impose a constructive trust on all of Defendant's funds and assets that arise out of its infringing activities;

14.     Adjudge HGW be awarded its costs and disbursements incurred in connection with this action, including HGW's reasonable attorneys' fees; and

15.     Adjudge that all such other relief be awarded to HGW as this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 28, Plaintiff hereby demands a trial by jury on all issues and on all counts for which a trial by jury may be had.

DATED this 15th day of July, 2024.          Respectfully submitted,


*/s/ Joseph R. Delehanty*
Joseph R. Delehanty (IN 31275-49)
**DICKINSON WRIGHT PLLC**
55 West Monroe Street, Suite 1200
Chicago, IL 60603
Tel: (312) 572-6905
Fax: (844) 670-6009
Email: jdelehanty@dickinson-wright.com
*Attorneys for Plaintiff*